## DREW v. COLE et al.

### No. 19,143; February 4, 1893.

#### 32 Pac. 229.

**Surface Water—Obstructing Natural Flow.**—Where, from time immemorial, surface water had flowed through well-defined channels, from the adjacent country, upon plaintiff's land, and would still but for the erection by plaintiff of an embankment which diverted the water upon defendants' land, the fact that a change in the conformation of the adjoining country, resulting from its cultivation by strangers, had obliterated the natural channels, and formed new ones, which would cause the water to overflow defendants' lands but for an obstruction erected by strangers many years before such change, will not justify plaintiff in maintaining his embankment, to the injury of defendants.

APPEAL from Superior Court, San Bernardino County; John L. Campbell, Judge.

Petition for injunction by H. L. Drew against Henry Cole and another. Defendants filed a cross-bill for affirmative relief. Judgment for defendants. Plaintiff appeals. Affirmed.

Willis, Cole & Craig and C. W. C. Rowell for appellant; Paris & Satterwhite, Rolfe & Freeman and Harris & Gregg for respondents.

HAYNES, C.—Plaintiff appeals from the judgment and an order denying his motion for a new trial. The action was brought to enjoin defendants from constructing a bulkhead or embankment by which, it is alleged, certain waters would be turned upon plaintiff's premises, to his injury. Defendants answered, and also filed a cross-complaint, seeking affirmative relief against the plaintiff. The findings of the court, upon all the issues, were in favor of defendants. The locus of the controversy is upon a subdivided portion of the San Bernardino ranch, northwesterly from the city of Redlands. Colton avenue runs east and west and California street crosses the avenue at right angles. The plaintiff's land lies on the north side of Colton avenue, and the land of defendants, Cole and Hicks, on the south side. California street is the east boundary of the land of the plaintiff and of defendant Hicks, and defendant Cole's land adjoins Mrs. Hicks' land on the west. The Adams or La Pierce land, mentioned in the testimony, lies on the south side of Colton avenue, and is separated from Mrs. Hicks' land by California street, and the land of William Curtis, mentioned in the testimony, lies on the west side of California street, and adjoins the land of defendant Hicks on the south. The lands of plaintiff and defendants, Cole and Hicks, are highly cultivated, and planted in orange, lemon, and other fruit trees and vines. The complaint alleges "That to the southeast of plaintiff's premises is a large section of country comprising what is known as the 'Old Barton Ranch' and 'Redlands,' all of which is cultivated and irrigated; and since the cultivation and irrigation of the same, and during heavy storms of rain, the water flows down from the same to the southeast corner of plaintiff's land, and has cut itself a channel down through said Colton avenue, running westward along plaintiff's south line, but outside and south of plaintiff's improvements, and is flowing thereon in greater or less quantities at different times." The complaint then charges that defendants are proceeding to build a bulkhead across Colton avenue, on the line of California street, for the purpose of preventing the water from passing down Colton avenue, and compelling it to pass over plaintiff's premises, to the great injury of his orchards and improvements, by cutting chan-

nels, etc. The answer alleges that during storms of rain, from time immemorial, the water has naturally flowed from the section of country mentioned in the complaint, in a northwesterly direction, to the southeast corner of plaintiff's land, and would still naturally flow in the same direction, upon and across plaintiff's premises, but for a dam or embankment constructed by plaintiff in the spring of 1890 across the natural course of said water, whereby it was diverted, and caused to flow down Colton avenue and over the defendant's lands; that the construction of the embankment being built by them, and the construction of which plaintiff seeks to enjoin, was necessary to prevent the diversion caused by plaintiff, and to protect their premises. Defendants' cross-complaint repeats these allegations, alleges that plaintiff threatens and intends to maintain his dam, and prays for an injunction, and that the dam may be abated as a nuisance. Plaintiff's answer to the cross-complaint denies specifically the material averments thereof, and alleges that about 1887, owing to the cultivation of the land lying to the southeast, large bodies of water were accumulated thereon for the purposes of irrigation, and ditches and canals were constructed; that by natural and artificial causes, over which he had no control, the conformation of the country lying southeasterly from his premises was so changed that ancient channels were obliterated, and new channels created, "and that the water since then coming through said channels will, if unobstructed, discharge itself over and through the place of William Curtis and the defendants in a northwest direction, and on through and over Colton avenue a long distance west of the southeast corner of his place"; and further alleges that defendants so graded California street, and constructed an embankment along the easterly side of said street, as to prevent the water from flowing as it otherwise would across their land, and that, if the water was permitted to flow as it naturally would across their land, the quantity would be insufficient to injure them. The court found (1) that all the matters and things stated in defendants' answer are true; (2) that plaintiff did, in the year 1890, erect a dam at the southeast corner of his land, with the intent and to the effect of diverting all of the water which flowed to said corner of his land through the natural

drains of the country, down Colton avenue, and thereby caused a large wash or gulch to be made in the avenue, and also caused said waters to run over the defendants' lands, and wash and injure and greatly damage the same, and that the water never flowed down Colton avenue before the erection of said dam by plaintiff; and, as to the cross-complaint, found all the allegations true, and all the denials and matters alleged in the answer thereto untrue. Judgment was rendered that plaintiff take nothing by his action, and upon defendants' cross-complaint judgment was entered that plaintiff's dam be abated as a nuisance. Appellant's notice of intention to move for a new trial specified, as the grounds thereof, (1) insufficiency of the evidence to justify the decision of the court; (2) errors of law occurring at the trial, and excepted to by the plaintiff; and (3) that said decision is against law. Under the second ground of motion above mentioned, there are no specifications whatever. Several particulars are specified wherein the evidence is claimed to be insufficient to justify the findings; but these, so far as material, hinge upon the question whether there was a natural channel or drainage which conducted the water to plaintiff's southeast corner, and thence into and upon his premises, and not down Colton avenue, or over the lands of defendants. The evidence is very voluminous, and every fact bearing on the issues between the parties appears to have been fully developed. Careful surveys of the country from which water flows to the vicinity of plaintiff's and defendants' lands were made, and topographical and profile maps were prepared to illustrate the various contentions of the parties and the testimony of the witnesses.

After a careful examination of the maps and the testimony of the witnesses, the principal issue of fact is not difficult of determination. It is somewhat obscured by the large mass of testimony, much of which is immaterial and sharply conflicting. Counsel for appellant concedes that "it is in evidence, and not contradicted, that at some time in the past a dry gulch ran down through these places to the southeast corner of plaintiff's place." Plaintiff's answer to the cross-complaint would seem to show quite conclusively that such dry gulch existed until about 1887, when, by the improvement and cultivation of the land, "the conformation of the

country lying to the southeast'' was changed by natural and artificial means; that old channels were obliterated and new ones created; and that ''the water since then coming through said channels will, if unobstructed, discharge itself over and through the places of William Curtis and the defendants, Cole and Hicks.'' The change in the conformation of the country, and the obliteration of the old channels, and the creation of new ones, were not upon defendants' lands, nor caused by them. Defendants' map shows, and there is much evidence tending to establish the fact, that the main gulch or arroyo came down from at or near the city of Redlands, and entered the Adams or La Pierce lot near the middle of the east line, and pursued its course to the southeast corner of plaintiff's land, and continued in the same general direction for some distance into plaintiff's lands, where it spread out into what one of the witnesses termed ''a swale.'' Another arroyo, but a smaller one, came into the Adams lot on the south side, and continued across the lot, and entered the main gulch near the point where it left that lot and entered plaintiff's premises. California street, as before stated, runs north and south on the west line of the Adams place and the east line of Mrs. Hicks' land. On the west line of the street is an embankment, averaging about three feet higher than the level of the cultivated land. This embankment was made twenty-one years ago for the purpose of a fence, by digging a ditch, and throwing the earth up on one side, and this embankment is about a foot higher than the present grade of California street. It does not appear, however, that at the time this embankment was made, nor until recent floods, the water would have flowed over the land of the defendants, nor that it would now have any material effect, but for the changes made in the surface of the lands above, whereby the ancient channels have been obliterated to a greater or less extent. Appellant relies very largely upon his topographical survey to show that the natural flow of the water would now be over defendants' land. That the natural flow would be at right angles to the contour lines is true, and would be conclusive upon that point if the surface were absolutely even and regular, but slight obstacles lying between the contour lines may divert the water from the course it would otherwise pursue.

But such evidence cannot overcome or change the course of natural channels conceded to exist or to have existed. Besides, these surveys were made shortly before the trial, and after the changes in the surface of the lands referred to by appellant in his pleadings and testimony, and for these changes the defendants are not responsible; nor are they responsible for the increased quantity of water reaching the east line of plaintiff's and defendants' property, resulting from clearing the lands above them, and the increased use of water for the purpose of irrigation, the breakage or overflow of ditches, and the like. So far as the arroyos across the Adams place, if they had remained unobstructed, would have conveyed the water, as they formerly did, to appellant's southeast corner, and into his land, he is not injured by the same quantity of water being now turned to the same point by the grading up of California street, or by the embankment maintained by Mrs. Hicks; nor could the defendants in any manner be held responsible for the acts of the public authorities in grading the street, so far as that may, under present circumstances, operate to turn the water to plaintiff's corner. But no relief was sought against those who changed the surface of the land above, so as to change or divert the course of the water, or through whose agency the quantity of the flow was increased, nor against the public for raising the grade of the street, nor against Mrs. Hicks for maintaining an embankment made many years before; for, if the defendants could be held liable for all this in an appropriate action, it could not change the result in this action. Appellant erected a dam across what is conceded to be at that point a natural channel, and which at some time in the past was the continuation of a natural channel or drainage for storm water from the city of Redlands to that point; and by the erection of the dam, and the removal of earth from that part of Colton avenue next his premises, appellant diverted the water into a new channel, to the injury of the avenue and of defendants' premises. So far, therefore, as the judgment against appellant is concerned, the material facts necessary to support it, so far as the existence of the watercourse, the erection of the dam, and the diversion of the water down the avenue were concerned, could have been sustained upon his own testimony, while the in-

jury to defendants resulting therefrom, as testified to by them, was practically uncontradicted; and the same facts found from the same evidence justified the dismissal of the plaintiff's bill for an injunction.

Appellant complains that there was no finding upon the allegation that not more than 2,500 inches of water naturally flowed at the point where the channel entered his land. But it is immaterial whether the quantity naturally flowing there was 500 or 2,500 inches. If any material quantity—that is, any quantity capable of doing damage to others if diverted—naturally flowed there, he had no right to obstruct it, and divert it to other and new channels, to the injury of others; and hence the quantity diverted, within the limits above stated, could not affect the character of his dam as a nuisance. I think the findings cover all the material issues, and are fully justified by the evidence, and that the findings support the judgment.

Some exceptions to evidence are found in the body of the transcript, but which are not referred to in the specifications of error, nor in appellant's brief, and we therefore assume that they are not relied upon. The judgment and order appealed from should be affirmed.

We concur: Vanclief, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.